**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

METROPOLITAN GLASS COMPANY, :
INC. and QBE INSURANCE
CORPORATION, :

     Plaintiffs, :

vs. :      CA 14-0418-CG-C

NATIONAL TRUST INSURANCE :
COMPANY, FCCI INSURANCE
COMPANY, and FCCI INSURANCE :
GROUP,
                         :
     Defendants.

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and

recommendation, pursuant to 28 U.S.C. § 636(b), on the complaint (Doc. 1, Exhibit A),

the defendants' motion to dismiss and/or strike certain claims and brief in support

thereof (Doc. 2), plaintiffs' response in opposition (Doc. 13), and the moving parties'

reply (Doc. 15). Upon consideration of the foregoing pleadings, it is recommended that

the Court **GRANT IN PART** and **DENY IN PART** the defendants' motion to dismiss

and/or strike certain claims (Doc. 2).

## FINDINGS OF FACT

"This action arises out of a lawsuit involving alleged defects and deficiencies in

the construction of the fifteen story, 98 unit Windemere Condominium Building in

Perdido Key, Florida[.]" (Doc. 1, Exhibit A, COMPLAINT, at ¶ 8.) Destinations, Inc., the

developer and owner of Windemere, entered a contract with McCrory to construct the

building. (*Id*. at ¶¶ 10-11.) On or about May 19, 2003, McCrory, the general contractor,

hired plaintiff Metropolitan Glass Company, Inc. ("Metropolitan") as a subcontractor "to order and install the windows and sliding glass doors at Windemere[.]" (*Id.* at ¶ 12.)

In or around May of 2006, Destinations filed suit against "Citizens"[1] to recover "ceiling delamination" damages wrought by Hurricane Ivan. (*Id.* at ¶ 14.) By court order dated October 6, 2008, the Windemere Association, Inc. ("Association") was substituted as party plaintiff for Destinations because in April of 2005 Destinations turned over control of the building to the Association. (*Id.* at ¶¶ 13 & 15.) Association filed an amended complaint on June 9, 2009, and therein asserted numerous claims against McCrory. (*See id.* at ¶ 16.) McCrory filed a second amended third-party complaint on November 21, 2011, and named Metropolitan and other subcontractors as the parties responsible for the damages claimed by the Association. (*See id.* at ¶ 17.) Approximately two months later, on January 17, 2012, the Association filed its third amended complaint that named Metropolitan as a defendant. (*Id.* at ¶ 18.)

> The Third Amended Complaint against Metropolitan allege[d] construction defects related to the windows and doors it installed and subsequent property damage to the Windemere building and work of other trades. The claims asserted against Metropolitan included, but were not limited to, ongoing water intrusion and damage the Windemere building since construction, resulting from the installation of incorrect windows and doors and resulting water intrusion. Additionally, in discovery, allegations were also made that through confusion over the wind codes, the wrong windows and doors were mistakenly installed, causing and resulting in water and other property damage to the interior structure of the building and interior parts of the building.

(*Id.* (internal citation omitted); *see also id.* at ¶ 19 ("After discovery, the damages claimed against Metropolitan exceeded $5,000,000.00.").)

---

[1]     The complaint in this case does not reveal or explain the identity of "Citizens." (*See generally* Doc. 1, Exhibit A.)

At all relevant times from October of 2007 through October of 2011, Metropolitan held two Commercial General Liability policies with FCCI, one for the term October 12, 2007 through October 12, 2010 and the second for the term October 12, 2010 through October 12, 2011. (*See id.* at ¶ 20.) Both policies included a limitation of liability per occurrence of $1,000,000.00, obligated "FCCI to 'pay those sums that the insured [Metropolitan] becomes legally obligated to pay as damages because of . . . "property damage" to which th[e] insurance applies[,]'" and obligated "FCCI to 'defend the insured [Metropolitan] against any "suit" seeking those damages.'" (*Id.* at ¶ 21 (internal citations omitted).)

> The FCCI CGL policy further provided that if other valid and collectible insurance was available to Metropolitan for a loss FCCI covered, FCCI's obligations would include, but are in no way limited to, at least[] a 4/5's (four-fifth's) share in the defense costs incurred by QBE and settlement funds paid by QBE on behalf of Metropolitan, based on the years of coverage by FCCI and one year of coverage by QBE.

(*Id.* at ¶ 22.) Indeed, Metropolitan's policies with FCCI and its policy with QBE Insurance Corporation ("QBE") provided for an identical method of sharing costs (*id.* at ¶ 23), as follows: "'If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.'" (*Id.* at ¶ 22 (citations omitted).)

Despite Metropolitan's timely notification to FCCI of the claims brought against it by McCrory and the Association, "FCCI denied coverage and refused to provide a defense and/or indemnity to Metropolitan." (*Id.* at ¶ 27; *see also id.* at ¶ 26.) However,

QBE did defend Metropolitan on the claims asserted by McCrory and the Association.

(*Id.* at ¶ 31.)[2]

32.    During mediation efforts, FCCI was given notice of an impending settlement to resolve the claims asserted against Metropolitan by the Association and McCrory. That notice demanded that FCCI step in and contribute to the settlement. That notice also expressly reserved any and all rights against FCCI for reimbursement/contribution, in the event that FCCI did not contribute.

33.    FCCI refused to contribute. Instead, FCCI again denied that it owed any coverage obligation to Metropolitan.

34.    The damages claimed against Metropolitan exceeded $5,000,000.00; exposing Metropolitan to liability greatly in excess of the QBE Policy limits of $1,000,000.00.

35.    In light of the potential for an excess judgment against Metropolitan, QBE paid its policy limits of $1,000,000.00 to settle the claims of the Association and McCrory filed against Metropolitan.

36.    QBE also incurred defense costs, expenses, and attorneys['] fees in defending Metropolitan in the underlying case in excess of $497,132.95.

(*Id.* at ¶¶ 32-36.)

Based upon the foregoing, Metropolitan and QBE filed a nine-count complaint in the Circuit Court of Mobile County, Alabama on August 8, 2014 against National Trust Insurance, FCCI Insurance Company, and FCCI Insurance Group ("FCCI"). (Doc. 1, Exhibit A.)

## COUNT I
## (DECLARATORY JUDGMENT)

.    .    .

38.    Plaintiffs are entitled to a declaration from the Court that a duty of defense was owed under the FCCI CGL Policy for the claims made against Metropolitan by the Association and McCrory.

---

[2]    Like the FCCI policies, the QBE policy contained limits of $1,000,000.00. (*Id.* at ¶ 31.) The term of the QBE policy was October 12, 2006 through October 12, 2007. (*Id.* at ¶ 30.)

39.     Plaintiffs are also entitled to a declaration from the Court that a duty of indemnity benefits was owed under the FCCI CGL Policy for the claims made against Metropolitan by the Association and McCrory.

40.     Plaintiffs allege that a justiciable controversy exists regarding the rights, duties, and obligations of the Defendants under the FCCI CGL Policy.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants in the full amount of all damages, attorneys' fees, costs, the settlement amount, and expenses incurred now and in the future by Plaintiffs, as well as an award of punitive damages in an amount that is sufficient to punish Defendants for their wrongful conduct in this matter, as well as to deter Defendants and other similarly situated defendants from similar conduct in the future, along with all further legal and equitable relief to which the Plaintiffs may be entitled.

## COUNT II
## (BREACH OF CONTRACT—SETTLEMENT CONTRIBUTION)

.     .     .

42.     Defendants received timely notice and demands to contribute to the settlement of the claims against Metropolitan filed by the Association and McCrory.

43.     Defendants failed and refused to contribute to Metropolitan's settlement with the Association and McCrory.

44.     QBE paid $1,000,000.00 to obtain that underlying settlement, along with attorneys['] fees and other expenses.

45.     Defendants owe Plaintiffs . . . a 4/5's (four-fifth's) share of the $1,000,000.00 paid by QBE to settle the underlying claims against Metropolitan, based on the years of coverage by FCCI and one year of coverage by QBE.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants in the full amount of all damages, attorneys' fees, costs, the settlement amount, and expenses incurred now and in the future by Plaintiffs, as well as an award of punitive damages in an amount that is sufficient to punish Defendants for their wrongful conduct in this matter, as well as to deter Defendants and other similarly situated defendants from similar conduct in the future, along with all further legal and equitable relief to which the Plaintiffs may be entitled.

## COUNT III

**(BREACH OF CONTRACT)**

.        .        .

47.     Defendants received timely notice of the claims filed against Metropolitan by the Association and McCrory.

48.     Defendants have failed and refused to contribute to Metropolitan's defense costs incurred in the underlying litigation.

49.     QBE has paid all of Metropolitan's defense costs and expenses in the underlying litigation.

50.     Defendants owe QBE . . . a 4/5's (four-fifth's) share of those costs and expenses, based on the years of coverage by FCCI and one year of coverage by QBE.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants in the full amount of all damages, attorneys' fees, costs, the settlement amount, and expenses incurred now and in the future by Plaintiffs, as well as an award of punitive damages in an amount that is sufficient to punish Defendants for their wrongful conduct in this matter, as well as to deter Defendants and other similarly situated defendants from similar conduct in the future, along with all further legal and equitable relief to which the Plaintiffs may be entitled.

## COUNT IV
## (REIMBURSEMENT/CONTRIBUTION)

.        .        .

52.     Defendants received timely notice of the claims filed against Metropolitan by the Association and McCrory.

53.     Defendants received timely notice of the impending settlement entered into t[o] obtain a release of the claims of the Association and McCrory.

54.     Defendants failed to contribute towards the cost of defending Metropolitan, and failed to contribute towards the settlement.

55.     Plaintiffs are entitled to . . . a 4/5's (four-fifth's) share in the defense costs incurred by QBE and settlement funds paid by QBE on behalf of Metropolitan, based on the years of coverage by FCCI and one year of coverage by QBE.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants in the full amount of all damages, attorneys' fees, costs, the settlement amount, and expenses incurred now and in the future

by Plaintiffs, as well as an award of punitive damages in an amount that is sufficient to punish Defendants for their wrongful conduct in this matter, as well as to deter Defendants and other similarly situated defendants from similar conduct in the future, along with all further legal and equitable relief to which the Plaintiffs may be entitled.

## COUNT V
## (UNJUST ENRICHMENT)

.         .         .

57.     Pursuant to the FCCI policies, Defendants had duties to contribute . . . a 4/5's (four-fifth's) share in the defense costs incurred by QBE and settlement funds paid by QBE on behalf of Metropolitan Glass.

58.     By failing to defend Metropolitan and denying coverage of the claims at issue, FCCI has been unjustly enriched.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants in the full amount of all damages, attorneys' fees, costs, the settlement amount, and expenses incurred now and in the future by Plaintiffs, as well as an award of punitive damages in an amount that is sufficient to punish Defendants for their wrongful conduct in this matter, as well as to deter Defendants and other similarly situated defendants from similar conduct in the future, along with all further legal and equitable relief to which the Plaintiffs may be entitled.

## COUNT VI
## (NEGLIGENCE/WANTONNESS)

.         .         .

60.     The Defendants had a duty under Alabama law to fully, fairly, adequately and correctly investigate the claims made against Metropolitan.

61.     Defendant negligently, wantonly, recklessly and/or intentionally breached their duties, proximately causing damage to the Plaintiffs.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants in the full amount of all damages, attorneys' fees, costs, the settlement amount, and expenses incurred now and in the future by Plaintiffs, as well as an award of punitive damages in an amount that is sufficient to punish Defendants for their wrongful conduct in this matter, as well as to deter Defendants and other similarly situated defendants from similar conduct in the future, along with all further legal and equitable relief to which the Plaintiffs may be entitled.

## COUNT VII
## (BAD FAITH FAILURE TO DEFEND)

.     .     .

63.     According to the valid, effective and binding FCCI CGL Policy insuring Metropolitan, FCCI owed Metropolitan a legal defense to the claims filed by the Association and McCrory.

64.     FCCI breached this contract of insurance by refusing to undertake Metropolitan's legal defense.

65.     FCCI intentionally and/or recklessly refused to undertake Metropolitan's legal defense to the claims filed by the Association and McCrory.

66.     At the time that FCCI refused to undertake Metropolitan's legal defense, there was no reasonably legitimate, arguable, or debatable reason for its refusal.

67.     At the time that FCCI refused to undertake Metropolitan's legal defense, FCCI knew that there was no reasonably legitimate, arguable, or debatable reason for its refusal.

68.     FCCI refused to undertake Metropolitan's legal defense in bad faith.

69.     In so refusing, FCCI consciously and/or deliberately engaged in oppression, fraud, wantonness or malice with regard to Metropolitan.

70.     Upon information and belief, FCCI has engaged in a pattern and practice of refusing the legitimate claims of its insureds in bad faith and in breach of FCCI's valid, effective, and binding contracts of insurance with its insureds.

71.     As a proximate consequence of FCCI's bad faith refusal to undertake Metropolitan's defense, Plaintiffs have suffered injuries and damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants in the full amount of all damages, attorneys' fees, costs, the settlement amount, and expenses incurred now and in the future by Plaintiffs, as well as an award of punitive damages in an amount that is sufficient to punish Defendants for their wrongful conduct in this matter, as well as to deter Defendants and other similarly situated defendants from similar conduct in the future, along with all further legal and equitable relief to which the Plaintiffs may be entitled.

## COUNT VIII
## (BAD FAITH FAILURE TO INVESTIGATE)

.     .     .

73.     At the time that FCCI refused to undertake Metropolitan's legal defense, FCCI intentionally and/or recklessly failed to determine whether there was any reasonably legitimate, arguable, or debatable reason for its refusal.

74.     At the time that FCCI refused to undertake Metropolitan's legal defense, FCCI had intentionally and/or recklessly failed to submit Metropolitan's claim for a legal defense to a proper cognitive evaluation or review.

75.     FCCI refused to investigate and/or evaluate Metropolitan's legal defense, acting in bad faith.

76.     In so doing, FCCI consciously and/or deliberately engaged in oppression, fraud, wantonness or malice with regard to Metropolitan.

77.     As a proximate consequence of FCCI's bad faith, Plaintiffs have suffered injuries and damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants in the full amount of all damages, attorneys' fees, costs, the settlement amount, and expenses incurred now and in the future by Plaintiffs, as well as an award of punitive damages in an amount that is sufficient to punish Defendants for their wrongful conduct in this matter, as well as to deter Defendants and other similarly situated defendants from similar conduct in the future, along with all further legal and equitable relief to which the Plaintiffs may be entitled.

## COUNT IX
## (BAD FAITH FAILURE TO SETTLE)

.     .     .

79.     According to the valid, effective and binding FCCI CGL Policy insuring Metropolitan, FCCI owed Metropolitan indemnity to the claims filed by the Association and McCrory.

80.     FCCI breached this contract of insurance by refusing to participate in the settlement of the claims filed against Metropolitan by the Association and McCrory.

81.     FCCI was provided timely notice of the settlement negotiations, and given an opportunity to participate in the settlement.

82.     However, FCCI intentionally and/or recklessly refused to participate in the settlement of the claims filed against Metropolitan.

83.     At the time that FCCI refused to [] participate in the settlement, there was no reasonably legitimate, arguable, or debatable reason for its refusal to contribute to the settlement.

84.     At the time that FCCI refused to []  participate in the settlement, FCCI knew there was no reasonably legitimate, arguable, or debatable reason for its refusal to contribute to the settlement.

85.     Alternatively[,] or concomitantly, at the time that FCCI refused to participate in the settlement, FCCI intentionally and/or recklessly failed to determine whether there was any reasonably legitimate, arguable, or debatable reason for its refusal to participate in the settlement.

86.     FCCI refused to participate in the settlement in bad faith.

87.     In so refusing to participate in the settlement, FCCI consciously and/or deliberately engaged in oppression, fraud, wantonness or malice with regard to Metropolitan.

88.     As a proximate consequence of FCCI's bad faith, Plaintiffs have suffered injuries and damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants in the full amount of all damages, attorneys' fees, costs, the settlement amount, and expenses incurred now and in the future by Plaintiffs, as well as an award of punitive damages in an amount that is sufficient to punish Defendants for their wrongful conduct in this matter, as well as to deter Defendants and other similarly situated defendants from similar conduct in the future, along with all further legal and equitable relief to which the Plaintiffs may be entitled.

(Doc. 1, at 7-16.)

The FCCI defendants filed their motion to dismiss and/or strike certain claims on September 9, 2014. (Doc. 2.) Therein, the defendants seek dismissal of the unjust enrichment (Count V) and negligent/wanton failure to  the investigate (Count VI) counts (*id.* at 2-4). And while it appears that the defendants sought dismissal or the striking of all counts alleging breach of contract and reimbursement/contribution (Counts II, III, and IV) in their original motion (*id.*

at 4), in their reply they state they simply seek to "strike those counts [] to the extent they are duplicative of one another." (Doc. 15, at 5; *see also id.* ("It frankly appears that these three counts should [] be combined into one count.").)[3] Finally, the defendants seek the striking of all references to punitive damages in the *ad damnum* clauses of each count of the complaint, save for the bad faith counts (that is, Counts VII, VIII and IX). (Doc. 2, at 4-5.)

In their response in opposition, the plaintiffs appear to concede that they do not seek punitive damages as to Counts I through IV; however, plaintiffs contend they are entitled to seek punitive damages as to the remaining counts of the complaint because Counts V through IX sound in tort. (*See* Doc. 13, at 7.) Plaintiffs contend that they properly assert two breach of contract claims in the complaint (Counts II and III) because the defendants breached two separate duties. (*Id.* at 2.) "First, the Defendants committed a breach by failing to assume and/or contribute to the legal defense of Metropolitan in the underlying case. Second, the Defendants breached the contract again by failing to contribute indemnity benefits and participate in the settlement in the underlying case." (*Id.*) As for the reimbursement/contribution count (Count IV), plaintiffs assert that this is a separate cause of action under Alabama law as recognized in *Nationwide Mut. Ins. Co., v. Hall*, 643 So.2d 551 (Ala. 1994). In addition, plaintiffs contend that their unjust enrichment claim (Count V) is properly raised inasmuch as the Federal Rules of Civil Procedure allow for alternative and inconsistent claims to be

---

[3]     The defendants also parenthetically suggest that plaintiffs' declaratory judgment count is duplicative of the contract claims; however, defendants end up suggesting no relief other than, as the undersigned appreciates it, the striking of the request for punitive damages. (*See* Doc. 2, at 4 n.1.) Accordingly, while the undersigned recommends that the Court order plaintiffs to amend their complaint to take out all unnecessary references to punitive damages, the defendants are due no other relief; Count I should otherwise remain intact.

made at this stage without requiring and election of remedies; the conclusion (by defendants) that plaintiffs will have an adequate remedy at law is premature since there has been no adjudication on the merits; the claims asserted by QBE go beyond any contractual duty owed by defendants such that the "Court may ultimately decide that QBE has unjust enrichment claims and/or reimbursement/contribution claims, but not contractual claims like Metropolitan[;]" and, the voluntary payments in *Northern Assurance Co. of America v. Bayside Marine Constr., Inc.,* 2009 WL 151023 (S.D. Ala. Jan. 21, 2009), was directed to the second type of unjust enrichment (that is, the holding of money improperly paid because of mistake or fraud), whereas this case raises the specter of the first type of unjust enrichment, that is, the holding of money which "'in equity and good conscience'" belongs to the plaintiffs. (*See id.* at 3-6.) Finally, it is the plaintiffs' position that Count VI, which alleges negligent/wanton failure to investigate, is actually the assertion of an "abnormal" bad faith claim. (*Id.* at 6.)

## CONCLUSIONS OF LAW

**A.** **Motion to Dismiss Standard**.

A Rule 12(b)(6) motion questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal,* 556 U.S. 662, 677-678 & 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Under Federal Rule of

Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678, 129 S.Ct. at 1949, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim that has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief.

*Id*. at 678-679, 129 S.Ct. at 1949-1950 (internal citations and quotation marks omitted); *see also id*. 680, 129 S.Ct. at 1951 (a plaintiff must nudge his claims "'across the line from conceivable to plausible.'"); *see Speaker v. U.S. Dep't of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than recite [] statutory elements in conclusory fashion. Rather, his allegations must proffer enough factual content to 'raise a right to belief above the speculative level.'"); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) ("Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in [p]laintiff's favor, but we are not required to draw plaintiff's inference. Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face." (internal citations and quotation marks omitted)), *abrogated on other grounds as stated in Mohamad v. Palestinian Auth.*, ___ U.S. ___, 132 S.Ct. 1702, 182 L.Ed.2d 720 (2012).

 **B.** **Plaintiffs' Negligent/Wanton Failure to Investigate Claim (Count VI) and Unjust Enrichment Claim (Count V)**. Count VI of plaintiffs' complaint is specifically entitled "Negligence/Wantonness," plaintiffs averring that the defendants "negligently, wantonly, recklessly and/or intentionally" breached their duty to "fully, fairly, adequately and correctly investigate the claims made against Metropolitan[,]" thereby "proximately causing damage to the Plaintiffs." (Doc. 1, Exhibit A, COMPLAINT, at ¶¶ 60-61.)

 "The Alabama Supreme Court has 'consistently refused to recognize a cause of action for the negligent handling of insurance claims, and . . . [does] not recognize a

cause of action for alleged wanton handling of insurance claims.'" *St. John's Deliverance Temple v. Frontier Adjusters,* 2012 WL 629056, *10 (S.D. Ala. Feb. 27, 2012) (quoting *Kervin v. Southern Guar. Ins. Co.,* 667 So.2d 704, 706 (Ala. 1995)), *report and recommendation adopted,* 2012 WL 750903 (S.D. Ala. Mar. 8, 2012); *see also Rogers v. Hartford Life and Acc. Ins. Co.,* 2012 WL 887482, *3 (S.D. Ala. Mar. 15, 2012) (same); *Clark v. Transcontinental Ins. Co.,* 2009 WL 387129, *5 (M.D. Ala. Feb. 13, 2009) ("Alabama law does not recognize a cause of action for negligent or wanton claims handling."). Consistent with the ruling in *Hillery v. Allstate Indem. Co.,* 705 F.Supp.2d 1343 (S.D. Ala. 2010), the undersigned recommends that this Court determine that Count VI of the plaintiffs' complaint "is foreclosed by the plain language of *Kervin,* and constitutes just the sort of negligent [and wanton] claims-handling cause of action that Alabama courts have refused to recognize[,]" *id.* at 1367; *see also id.* at 1366-1367 (court noted that "plaintiffs alleged a cause of action for negligence [Count Five] on the theory that Allstate had negligently breached 'the duty to properly *investigate* and adjust their insurance claims[]'" (emphasis supplied)); *cf. Morton v. Travelers Ins.,* 2013 WL 6441805, *2 (N.D. Ala. Dec. 9, 2013) (citing *Kervin* and dismissing negligence and wantonness claims as not cognizable under Alabama law); *Butler v. Allstate Indem. Co., Inc.,* 2010 WL 381164, *3 (M.D. Ala. Jan. 25, 2010) (finding that Butler, who alleged that defendant Hamilton "'had a duty to properly handle, investigate[,] and pay Ms. Butler's claims[,]'" could not "state a cause of action against Hamilton for negligence and/or wantonness because of how he handled her insurance claim[]"), and should, therefore, be **DISMISSED**. In other words, the defendants' motion to dismiss Count VI (Doc. 2, at 3-4) is due to be **GRANTED**.[4]

---

[4]     The plaintiffs' argument in opposition that Count VI is actually an "abnormal (Continued)

The defendants also seek the dismissal of plaintiffs' unjust enrichment count (Count V). (*Compare* Doc. 2, at 2-3 *with* Doc. 15, at 1-3.) Plaintiffs allege in Count V that "**[p]ursuant to the FCCI policies**, Defendants had duties to contribute . . . a 4/5's (four-fifth's) share in the defense costs incurred by QBE and settlement funds paid by QBE on behalf of Metropolitan Glass[]" and "[b]y failing to defend Metropolitan and denying coverage of the claims at issue, FCCI has been unjustly enriched." (Doc. 1, Exhibit A, COMPLAINT, at ¶¶ 57-58 (emphasis supplied).)

"Alabama law makes clear that unjust enrichment is an equitable remedy only to be invoked where there is no available remedy at law." *Northern Assurance Co. of America v. Bayside Marine Constr., Inc., supra,* at *4 (citations omitted); *see also id.* ("In Alabama, the doctrine of unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law.").

> The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another. To prevail on a claim for unjust enrichment, [plaintiffs] must be able to prove facts showing that [defendants] hold[] money which, in equity and good conscience, belongs to [plaintiffs], or holds money which was improperly paid to [Defendants] because of mistake or fraud. Unjust enrichment claims are precluded by proof that the party voluntarily paid what he or she seeks to recover. Likewise, in the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched but is not deemed to have been *unjustly* enriched.

*Id.* (internal quotation marks, citations and ellipses omitted; emphasis in original).

---

bad faith claim" (Doc. 13, at 6) should be **REJECTED** both because, as the defendants point out (Doc. 15, at 4), plaintiffs have asserted a bad faith failure to investigate claim in their complaint (*compare id. with* Doc. 1, Exhibit A, COMPLAINT, at ¶¶73-77 (Count VIII asserts a cause of action for bad faith failure to investigate)), and because there is "only *one*" tort of bad faith refusal/failure to investigate, under Alabama law, "not two 'types' of bad faith or two separate torts." *State Farm Fire and Cas. Co. v. Brechbill,* 144 So.3d 248, 257-258 & 258 (Ala. 2013).

As was the case in *Northern Assurance Co. of America v. Bayside Marine Constr., Inc., supra,* Count V of the plaintiffs' complaint arises from the policies of insurance issued by the FCCI defendants to Metropolitan Glass (*see* Doc. 1, Exhibit A, COMPLAINT, at ¶ 57 ("[p]ursuant to the FCCI policies[]")), the same policies upon which the plaintiffs' breach of contract and contribution claims, as well as bad faith claims, are based (*see id.* at ¶¶ 20-28, 41-55 & 62-88). Thus, plaintiffs' unjust enrichment claim is precluded, given the adequate remedies at law (that is, breach of contract, contribution, and bad faith). *Northern Assurance Co. of America v. Bayside Marine Constr., Inc., supra,* at *4 ("Such unjust enrichment claims are precluded, as there is an adequate remedy at law for damages under those theories of recovery."). Stated differently, if the defendants are found liable for breach of contract, contribution, or bad faith, the plaintiffs "will be compensated for [their] alleged losses." *Id.* (citations omitted).[5] Thus, the undersigned recommends that the Court **DISMISS** plaintiffs' unjust enrichment claim (Count V).[6]

C.     **Defendants' Alternative Motion to Strike as it Relates to Plaintiffs'**
**Breach of Contract and Reimbursement/Contribution Claims (Counts II, III, and IV)**

_____

[5]     Because plaintiffs have adequate remedies at law, the arguments set forth in their opposition (*see* Doc. 13, at 4-5) need fail.

[6]     In so recommending, the undersigned is not unmindful of plaintiffs' assertion that it may plead in the alternative and/or inconsistently (*see* Doc. 13, at 3-4). *See* Fed.R.Civ.P. 8(d)(2) & (3) ("A party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient. . . . A party may state as many separate claims . . . as it has, regardless of consistency."). As this Court has previously instructed, such reasoning cannot save plaintiffs' unjust enrichment claim "because this is not a case in which the existence of an express contract is a disputed question of fact, such that alternative [and/or inconsistent] pleading of express[] and implied contract theories of liability would be permissible." *Selman v. CitiMortgage, Inc.,* 2013 WL 838193, *13 n.19 (S.D. Ala. Mar. 5, 2013) (citations omitted).

**and the _Ad Damnum_ Clauses in Counts I through IV**. The defendants' seek to strike

unidentified portions of plaintiffs' Counts II through IV and the _ad damnum_ clause

requests for punitive damages with respect to the equitable and contract claims set forth

in the complaint. In their original motion, defendants cite prominently to Rule 12(f) of

the Federal Rules of Civil Procedure which provides that "[t]he court _may_[7] strike from a

pleading an insufficient defense or any redundant, immaterial, impertinent, or

scandalous matter." Fed.R.Civ.P. 12(f) (emphasis supplied).

> The purpose of a motion to strike is to clean up the pleadings, streamline
> litigation, and avoid unnecessary forays into immaterial matter. A court
> will not exercise its discretion under the rule to strike a pleading unless
> the matter sought to be omitted has no possible relationship to the
> controversy, may confuse the issues, or otherwise prejudice a party.
> Because striking a portion of a pleading is a drastic remedy and because it
> often is sought by the movant simply as a dilatory tactic, motions under
> Rule 12(f) are viewed with disfavor and are infrequently granted.

_Principal Bank v. First American Mortgage, Inc._, 2014 WL 1268546, *1 (M.D. Fla. Mar. 27,

2014) (internal citations, quotation marks, and brackets omitted)); _see also TracFone_

_Wireless, Inc. v. Zip Wireless Products, Inc._, 716 F.Supp.2d 1275, 1290 (N.D. Ga. 2010)

("Rule 12(f) reflects  the inherent power of the Court to prune down pleadings so as to

expedite the administration of justice and to prevent abuse of its process. Motions to

strike are generally viewed with disfavor and are often considered time wasters. A

motion to strike is a drastic remedy to be resorted to only when required for the

purposes of justice . . . and should be granted only when the pleading to be stricken has

no possible relation to the controversy." (internal citations, quotation marks, and

brackets omitted)). Indeed, stated more succinctly, "[i]n addressing a Motion to Strike,

---

[7]        "The Court has broad discretion in considering a motion to strike under Federal
Rule of Civil Procedure 12(f)." _Tracfone Wireless, Inc. v. Access Telecom, Inc.,_ 642 F.Supp.2d 1354,
1360 (S.D. Fla. 2009) (citations omitted).

'a court will not exercise its discretion . . . unless **the matter sought to be omitted** has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.'" *Hepp v. Paul Revere Life Ins. Co.,* 2014 WL 3865389, *7 (M.D. Fla. Aug. 5, 2014) (emphasis supplied); *see also Tracfone Wireless, Inc. v. Access Telecom, Inc., supra,* 642 F.Supp.2d at 1361 (""A motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'" (citations omitted)).

The initial problem with the defendants' Rule 12(f) motion to strike as it relates to Counts II, III, and IV is that nowhere in the original motion or reply do the defendants specifically identify for this Court what allegations should be stricken, *compare, e.g., Principal Bank, supra,* at *1 ("Defendants seek to strike the following allegations contained in the Fifth Amended Complaint . . . .") and *TracFone Wireless, Inc. v. Zip Wireless Products, Inc., supra,* 716 F.Supp.2d at 1290 ("Defendants ask the Court to strike Exhibit D to the complaint and paragraphs 72 through 74 of the complaint, in which TracFone references the attached consent judgments.") *with Capodanno v. Premier Transp. & Warehousing, Inc.,* 2010 WL 996532, *1 (S.D. Fla. Mar. 17, 2010) ("Premier now seeks to strike paragraph five from the Third Amended Complaint.") and *Allen v. Life Ins. Co. of North America,* 267 F.R.D. 407, 414 (N.D. Ga. 2009) ("Defendants argue that each of the **identified paragraphs** are sufficiently 'redundant, immaterial, impertinent, or scandalous' to justify being stricken." (emphasis supplied)); therefore, this "base" failure dictates the **DENIAL** of the defendants' motion to strike as it relates to Counts II, III, and IV. Moreover, the defendants' wholesale failure to establish that any word or allegation in Counts II, III, or IV either has no possible relation to the controversy, may confuse the issues, or otherwise may prejudice the defendants, also dictates the **DENIAL** of their motion to strike. *See Tracfone Wireless, Inc. v. Access Telecom, Inc., supra,*

642 F.Supp.2d at 1361 ("Defendants have not made any showing that any particular word, recitation, or allegation conforms to this standard."). Indeed, the moving parties appear to "back away" from their embracement of Rule 12(f) in their reply in commenting that "[i]t frankly appears that these three counts should all be combined into one count." (Doc. 15, at 5.) In making this comment, the defendants appear to be contending that plaintiffs' complaint could have been drafted in a more concise manner with fewer counts set forth therein; however, so long as the plaintiffs' complaint complies with Rules 8 and 10 of the Federal Rules of Civil Procedure "it is irrelevant whether the complaint could have been 'better' pled." *Allen, supra,* 267 F.R.D. at 413. The defendants' motion and reply make no reference to how Counts II, III, or IV of plaintiffs' complaint fail to comply with Rules 8 and 10; therefore, "it is irrelevant whether the complaint could have been 'better' pled."[8] Accordingly, defendants' motion to strike unidentified portions of Counts II, III, and IV (Doc. 2, at 4) should be **DENIED**.

As for the *ad damnum* requests for punitive damages appended to Counts I through IV, it is unnecessary for the Court to strike those requests since plaintiffs' counsel has agreed to remove the references "to punitive damages in the *ad damnum* clauses in Counts I, II, and III if the Court would like" (Doc. 13, at 7) and while they are at it they can remove those references from the *ad damnum* clause of Count IV (reimbursement/contribution) unless they make specific reference to case law establishing that their contribution count sounds in tort, rather than in contract. Thus,

---

[8]      Plaintiffs are the "masters" of their complaint, not the defendants, and plaintiffs cannot be made to plead in the manner that the defendants would dictate.

the Court should simply require the plaintiffs to file an amended complaint that removes the unnecessary references to punitive damages.

## CONCLUSION

Based upon the foregoing, the Magistrate Judge recommends that the defendants' motion to dismiss and/or strike certain claims (Doc. 2) be **GRANTED IN PART** and **DENIED IN PART** as more fully explained in the body of this opinion.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 17th day of December, 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**